Thomson, J.,
delivered the opinion of the court.
This suit was brought by George T. Oliver against the board of county commissioners of San Juan county to recover the amount 'of two warrants, issued by order of the commissioners to William F. Graf, and by him transferred to the plaintiff. The plaintiff had judgment and the defendant brings error.
The plaintiff alleged that during the years 1886 and 1887, *516 Graf was the duly qualified and acting treasurer of San Juan county; that on the 18th day of April, 1887, he presented his bill to the commissioners for the amount then due him as compensation for his services as treasurer; that the commissioners on the same day! passed upon the bill, determined the amount due to be $525, allowed the same, and ordered it paid by a warrant upon the county treasury; that a warrant was issued pursuant to the allowance, payable out of money not otherwise appropriated, which warrant was on April 7,1887, presented to the treasurer for payment and countersigned by him as provided by law; that the plaintiff was the owner and holder of the warrant for value, and that it was due and unpaid. The other warrant was for the same amount, and the complaint contained the same allegations concerning it, except that the date of j allowance and issue, and of presentation to the treasurer for payment, was July 26, 1887.
The answer admitted that the warrants were issued as alleged in the complaint, but averred, first, that at the time of issue no account had been rendered to the board by the treasurer for his services, and no allowance made to authorize the issue; second, that the warrants were issued in payment of the salary of the treasurer as fixed by the board, and were salary warrants; third, that the action was not brought within six years after the i^sue of the warrants and their presentation to the treasurer ; and, fourth, that at the time of the issue of the warrants, j Graf was a defaulter, and owed the county $10,000. ;
A demurrer was sustained to the fourth defense. The replication denied the material averments of the remaining defenses, but admitted that the warrants “ were issued for and upon the salary of said treasurer as paid by said board.” The reply contained other allegations concerning the retention by tíie board of the legal fees and commissions of the treasurer; but they were immaterial, and did not affect any question which is important in the case.
The warrants directed the treasurer of the county to pay to W. F. Graf or bearer the sums specified. “ for 'salary as *517 county treasurer,” out of money in the treasury not otherwise appropriated. If they are valid upon their face, the presumption is that they were lawf ully issued. This presumption could be overthrown onty by positive evidence of their illegality, and the burden was upon the defendant to show the facts which invalidated them. They were received in evidence without objection, and no objection to them can now be considered, except that which goes to their form and contents.
The iirst objection of this character is that they appear upon their face to have been issued for an unauthorized purpose. It is contended that as at the time when the services were i’endered, county treasurers were compensated by fees or commissions, and not by salary, there was no authority to issue warrants in payment of a salary. The law then in force provided that county treasurers should receive, as compensation, a certain per cent of the taxes and other moneys received by them, and mileage for necessary travel. General Statutes, sec. 1442. The statute made it their duty to receive the money belonging to the county, from whatever source it might be derived, and to pay it out only on the orders of the board of commissioners, according to law. General Statutes, sec. 635. They were also ■ required to keep just and true accounts of all moneys coming into their-hands, and at the meetings in July and January, of the board of commissioners, or at such other times as the commissioners might direct, settle their accounts with the commissioners, exhibiting all their books, accounts and vouchers to be audited and allowed. General Statutes, sec. 636. The periodical settlement for which the statute provided, or such other settlement as the commissioners might direct, would necessarily include the fees and commissions of the treasurer, which, as part of his accounts to be submitted to the commissioners, must be audited and allowed before he would be entitled to receive them; and the prohibition against paying out any money of the county, except on order of the board, would include payment to himself; so that to enable him to receive *518 his compensation, it must be allowed, and an order or warrant for the amount duly issued to him. The warrants in question purported to be issued for the treasurer’s salary. Strictly, a salary is an agreed compensation for services, payable at regular intervals; but a more liberal meaning is frequently given to the wcjrd. Its synonyms, as Webster gives them, are stipend, hire,' wages, pay, allowance. The treasurer had no salary in the technical signification of the term, and none could legally be paid to him; but he was entitled to the pay which the law allowed. There was no evidence that there was any arrangement between the commissioners and Graf, whereby he was to receive some stipulated sum as salary in lieu of his fees, or that his compensation was to be other than that provided by law. The evident purpose of the warrants, as expressed upon their face, was to pay Graf for his services as treasurer, and we must hold that by the word “salary,” merely legal compensation was meant, and that the warrants were for the amount of fees and commissions due him by law. The phraseology of the admission in the answer gives the same effect to the word. Counsel assert that Graf had the right to retain his commissions out of the money received by him, and they say that there is no evidence that he did not do so. In our opinion he had no such right; but whether he had or riot, the fact that they were allowed, and warrants issued for their amount, is presumptive evidence that he had not retained them. If he had, it devolved upon the defendant to show the fact; but nothing of the kind was attempted.
Another objection to] the warrants which the defendant raises, and which is elaborately discussed on both sides, is that they were expressed to be paid out of money in ■ the treasury not otherwise appropriated. The only provision of law concerning the form of such warrants, in existence at the time the first of these was issued, was section 646 of the General Statutes, as follows: “ County orders shall be signed by the chairman and attested by the clerk, and shall specify the nature of the claim of service for which they were issued.” *519 Both of these warrants were signed by the chairman and attested by the clerk, and specified the nature of the claim or service for which they were issued. In their issue the foregoing provision was complied with, strictly. They were properly payable out of the general county fund, and money not otherwise appropriated belonged to that fund. It was unnecessary to make them so payable in terms, because the statute did not require it; and the purpose of their issue, as expressed, would point to the fund from which they should be paid; but there was no impropriety in making the designation so long as the correct fund was named. If we understand the objection at all, it is without merit.
But it is contended that the second warrant is void for want of compliance with the requirements of section 2 of an act of the legislature approved April 28, 1887, and which by its terms took effect immediately upon its passage. Session Laws 1887, p. 241. This law was not in force upon the date of the issue of the first warrant, but it was when the second was issued. The section referred to may, for the purposes of its consideration, be divided into two parts. The first part provides, among other things, that the general county fund shall be known as the “ ordinary county revenue fund,” and the general road fund as the “ road purpose revenue fund; ” that warrants and orders payable on demand shall be drawn and issued upon the county treasurer, or against any fund in his hands, only when at the time of drawing and issuing, there shall be sufficient moneys in the appropriate fund in the treasury to pay such warrants or orders. The second part, in so far as it affects the question under consideration, is as follows: “ Whenever there are no moneys in the county treasury of a county to the credit of the proper fund to meet and defray the necessary expenses of the county, it shall be lawful for the board of county commissioners of such county to provide that county warrants and orders of such county may be drawn and issued against, and in anticipation of, the collection of taxes already levied for the payment of such expenses, to the extent of eighty *520 per centum of the total amount of the taxes levied; provided., that warrants and orders so drawn and issued, under the provisions of this section, shall show upon their face that they are payable solely from the fund upon which the same are drawn, and the taxes levied to form the same when collected, and not otherwise.” It is provided in the same act that county warrants and orders may be in such form as the county commissioners shall determine. The first part of the section as we have divided it deals with warrants issued against funds actually oiji hand, while the second makes provision for orders to be drawn against levied, but uncollected, taxes. Counsel contend that the proviso contained in this part of the section applies to all orders drawn upon the treasury, whether against funds in existence, or funds yet to be formed. We are of a different opinion. The second part of the section, as we have quoted it, is complete within itself. It is separated from the first by a period, and treats of a different subject. It creates an authority in the board of commissioners which ¡did not exist before. It empowers them to provide for the issue of warrants against uncollected revenue, and then prescribes what these warrants shall show upon their face. The words in the proviso, “so drawn and issued,” without more, would naturally and necessarily have reference to, and depend upon, what immediately precedes them, and what immediately precedes them is the authority to issue warrants in anticipation of the collection of taxes. There could be no doubt of their meaning were it not for the succeeding words, j“ under the provisions of this section,” from which an inference might arise that the proviso was intended to apply to all warrants provided for in the entire section. However, the language following the last quoted words seems to us to be inconsistent with such an inference. The warrants are to be drawn against the fund, and the requirement is that they shall show that they are payable solely from that fund and the taxes levied to form the same fund when collected. The warrants are payable in the future, from taxes yjet to be collected, and that they are *521 so payable, and not out of money already in the treasury, must appear in some manner on their face. In our view the language is not susceptible of any other construction. The warrant we are now considering was a demand warrant, payable out of money presumably on hand, and we do not think that the proviso had, or was intended to have, any application to it.
But granting that we are in error in this, and giving counsel the benefit of. a concession that all warrants, indiscriminately, are governed by the provisions we have been discussing, what would follow ? It is not required that a warrant shall state in terms what fund it is drawn against, or that it is payable solely from such fund. All that is necessary is that it show upon its face in some way that it is not payable otherwise than from the proper fund. Its form is not prescribed; that is left to the decision of the commissioners. They are authorized to provide what its form shall be, and a warrant in the form provided by them is sufficient if the necessary statutory requisites appear upon its face. Now it sufficiently appears upon the face of this warrant that it was payable out of the ordinary county revenue fund. That was the only fund containing money “ not otherwise appropriated ; ” and the warrant being drawn only against that fund, was payable solely from it.
The decision of the court upon the demurrer to the fourth defense is the next subject of objection. That defense was an attempt to interpose, as a counterclaim, an alleged indebtedness of Graf to the county, incurred in his official capacity, and existing when the warrants were issued. The demurrer was properly sustained. Each warrant was presumptively the outcome of a settlement between the commissioners and Graf of all his accounts as treasurer, as they stood at the time of settlement. If he had owed the county anything when either settlement was had, the legal presumption is that the indebtedness was embraced in the settlement. The answer admitted that the warrants were issued as alleged in the complaint, but it did not allege any fraud or mistake *522 in the settlement upon which their issue was ordered, or set forth any fact which would authorize the court to set aside or disregard the settlement, or from which it would appear that' the settlement was incomplete, or did not include the indebtedness. The presumption is that the warrants represented the net amount due to Graf upon settlement made in accordance with the statute, and the defense was fatally defective in not stating some fact or facts which would authorize the court to go behind it.
The plea of the statute of limitations is sufficiently answered by the dates of the warrants and the date of filing the complaint.
At the close of the plaintiff’s case, the defendant moved for a nonsuit. The motion was by agreement held for decision until the ensuing term of court, at which time it was denied. The defendant then offered to prove a contract made in January, 1886, between the commissioners and Graf, whereby they were to pay him a salary for that year only. The court refused to receive the evidence on the ground of its immateriality. The warrants sued upon were for the treasurer’s compensation for services rendered in 1887, and what relevancy a contract,which was confined to 1886, could have to any question in this case we are unable to conjecture. There was no error in rejecting the offered evidence.
We are unable to find anything in the record which would justify us in reversing the judgment, and it must therefore be affirmed.

Affirmed.